**TEDDER BOAT RAMP SYSTEMS, INC., Plaintiff,**

v.

**HILLSBOROUGH COUNTY, FLORIDA, Defendant.**

No. 96–1537–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

June 23, 1999.

Edward L. Scott, Edward L. Scott, P.A., Ocala, FL, for Tedder Boat Ramp Systems, Inc., plaintiff.

Christine Marie Beck, Hillsborough County Attorney's Office, Tampa, FL, for Hillsborough County, Florida, defendant.

## ORDER

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant's Motion for Judgment on the Pleadings as to Count II (Dkt.22), and Plaintiff's response (Dkt.24).

Plaintiff Tedder Boat Ramp Systems, Inc. filed an action for injunction and damages against Hillsborough County for (1) infringement of copyright and unfair competition and (2) violation of the Uniform Trade Secrets Act. Count II, at issue, was brought under Section 688.003 of the Florida Statutes to enjoin the use of a trade secret, for an accounting, and for exemplary damages.

## PLAINTIFF'S ALLEGATIONS:

Plaintiff, a corporation in Ocala, Florida, whose main business is designing and building boat ramps, has made the following allegations. In 1985, Plaintiff designed a boat ramp system, the Tedder Boat Ramp System, and the system was copyrighted on February 26, 1992. Plaintiff submitted a copy of his boat ramp design to Defendant for consideration for use in the Williams Park and Simmons Park boat ramps. Plaintiff alleges that Defendant knew his designs were copyrighted and confidential, and not to be disclosed to others without the written permission of Randall G. Tedder.

In April, 1996, Plaintiff contacted Defendant and discovered that Defendant had made its own boat ramp design for the Courtney Campbell boat ramp. Plaintiff obtained a copy of Defendant's design blueprints, and alleges that the designs were identical or substantially similar to Plaintiff's copyrighted design. Plaintiff further alleges that his designs were trademarked. Hillsborough County's design was allegedly designed, supervised, and approved by agents and/or employees of Hillsborough County.

On April 18, 1996, Plaintiff notified Defendant that Defendant had infringed upon Plaintiff's copyright, and demanded that Defendant cease and desist from infringing on Plaintiff's copyright. Defendant did not cease and desist, but continued to distribute and sell copies of its technical drawings.

Plaintiff has gone to great expense in developing and promoting its copyrighted design. Plaintiff has acquired a substantial market value in boat ramp design,

and Defendant's infringing technical drawing has hindered its market value. Additionally, Defendant has created and taken advantage of confusion in the trade to plaintiff's damage. Defendant has misappropriated Plaintiff's good will and taken advantage of Plaintiff's skill and expenditures. Also, Defendant has caused Plaintiff irreparable injury by reducing Plaintiff's market. Therefore, the acts of Defendant constitute inequitable conduct, unfair trade practices, and unfair competition.

Plaintiff also moves under Florida Statute Section 688.003 to enjoin the use of a trade secret, for an accounting, and for exemplary damages. Plaintiff alleges his submitted designs were clearly market confidential and copyrighted and that Defendant's misappropriation of Plaintiff's trade secrets was willful and malicious. Defendant's acts have resulted in their unjust enrichment, and has and will continue to damage Plaintiff's business.

Plaintiff demands Defendant be enjoined during the pendency of this action from infringing Plaintiff's copyright, and from publishing, selling, marketing, or otherwise disposing of any copies of Plaintiff's Tedder Boat Ramp System. Plaintiff also requests that Defendant pay damages to the Plaintiff for infringement of copyright, unfair trade practices, and unfair competition.

### DISCUSSION:

Defendant has made a motion for judgment on the pleadings as to Count II of Plaintiff's First Amended Complaint. Defendant alleges that in Plaintiff's claim for violation of Uniform Trade Secrets Act, he has failed to state a claim upon which relief can be granted. Therefore Defendant seeks dismissal under Rule 12(c), Fed. R.Civ.P.

■ The Restatement of Torts and the court in *Abbott Laboratories v. Norse Chemical Corp.*, established two essential elements to a cause of action for misappropriation of a trade secret: (1) there must be an actual trade secret and (2) there must have been a breach of confidence. 33 Wis.2d 445, 147 N.W.2d 529 (1967); 33 Wis.2d 445, 147 N.W.2d 529, 152 U.S.P.Q. 640. "The use of someone else's idea is not automatically a violation of the law. It must be something that meets the requirements of a 'trade secret' and has been obtained through a breach of confidence." *Furr's Inc. v. United Specialty Advertising Co.*, 338 S.W.2d 762, 766 (Tex.Civ.App. 1960). Florida's Uniform Trade Secret Act defines a misappropriation as either an acquisition of a trade secret by improper means, or disclosure or use by someone without proper consent. In both of these misappropriation definitions, a trade secret must first have existed before it could be misappropriated. The Court will analyze these two requirements as to their validity, as well as their relation to Defendant's arguments.

### I. Does Plaintiff have a valid trade secret?

■ According to the Uniform Trade Secrets Act, a trade secret is defined as: "information ... that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Florida Statutes, Section 688.002(4).

First, Defendant argues that pursuant to Chapter 119, Florida Statutes, Hillsborough County is governed by the Public Record Act, and therefore, any documents submitted to Hillsborough County are to be made public. However, as Plaintiff asserts, the Freedom of Information Act § 552(b)(4) provides an exemption to disclosure to trade secrets. The Supreme Court has concluded that the exemption is permissive rather than mandatory, and an agency could disclose information that fell under § 552(b)(4)'s exemptions. *Chrysler*

*Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 1713, 60 L.Ed.2d 208 (1979). Therefore, if Plaintiff did submit a valid trade secret, the government would not be required to disclose it, but could at its discretion. Therefore, if the government chose to make the trade secret public, it would not satisfy the secrecy requirement of a trade secret.

Defendant also argues that because Plaintiff copyrighted his design, any member of the public may view and inspect the drawings. See 17 U.S.C.A. § 705. Consequently, Plaintiff's design cannot constitute a trade secret since the information is generally known or readily accessible to third parties. Although the Court has not ruled on whether a copyright negates any claim of trade secret infringement, the Court has established a similar rule that applies to patents.

The Supreme Court has established that the patenting of a product negates the possibility that the product is also a trade secret. *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Scharmer v. Carrollton Manufacturing Co.,* 525 F.2d 95 (6th Cir.1975). A patent, including all of its specifications, is made available for public view. A federal court, applying Florida law, similarly determined that the issuance of a patent negates the necessary element of secrecy needed for a trade secret claim. *Keystone Plastics, Inc. v. C & P Plastics, Inc.* 340 F.Supp. 55 (S.D.Fla. 1972).

Similarly, copyrights are available to the public for examination and viewing purposes. Op.Atty.Gen., 082–63, Sept. 1, 1982. However, the Supreme Court has determined that "the Copyright Act contains no requirement that the copyright holder must make his works public." *Stewart v. Abend,* 495 U.S. 207, 229, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). It is difficult to reconcile the conflict between the Copyright Office making the copyrighted material available to the public, versus the holder's right to keep his works secret. Hypothetically, the copyright holder may choose to keep his designs private while the Copyright Office makes them available for public review. In this case, the design would still be available to the public, and "[k]nowledge cannot be placed in the public domain and still be retained as a 'secret'." *Skoog v. McCray Refrigerator Co.,* 211 F.2d 254, 257 (7th Cir.1954). Therefore, since it is always possible, even if not certain, that copyrighted materials are available to the public, the element of secrecy is not established.

However, in *Bateman v. Mnemonics,* the Eleventh Circuit Court of Appeals determined that a copyright claim does not preempt a trade secret infringement claim as long as the "extra element" of confidentiality is met. 79 F.3d 1532 (11th Cir. 1996). This case dealt with an alleged misappropriation of computer software trade secrets. Often, computer software is put into its own category, and even exempted from complete disclosure under the Copyright Act. The Court finds that this factor is a significant difference from the instant case, and allow the claim at issue here to be treated more like the patents in *Keystone.* In addition, Plaintiff relies on a similar case from Georgia. In *CMAX/Cleveland, Inc. v. UCR,* the court concluded that making an infringing copy of copyrighted software was disclosing trade secrets. 804 F.Supp. 337 (M.D.Ga. 1992). Once again, this case applies to computer software, which is placed into its own category.

However, the Uniform Trade Secret Act's definition of a trade secret not only requires that a trade secret be kept from the public, but also states that if others were given access to the trade secret, they could "obtain economic value from its disclosure or use." 688.002(4)(a). Therefore, if the only public means to the design specifications were through the copyright office, a person would only be able to view the designs. A copyright leaves sole discretion to the possessor as to who may

copy the design, and the general public may not profit from directly copying another's copyrighted design. However, although it may be difficult for a person to memorize and replicate a complex design by merely viewing a copyrighted design, it is not impossible. In addition, an individual viewing the design can discover where it was being used. An individual could then view the construction of, in this case, the boat ramp, and this type of duplicating the plans would not necessarily violate the copyright. *Imperial Homes Corp. v. Lamont,* 458 F.2d 895 (5th Cir.1972). Further, with the permission of the copyright holder, an individual may copy, use, and profit from a copyrighted design. Consequently, an individual may be able to indirectly profit from another's copyright without violating the provisions of copyright law.

## II.  Does public disclosure preclude the existence of a confidential relationship?

As the Court noted, Plaintiff's copyright may be made public at the discretion of Defendant as well as by the Copyright Office. Florida has only decided that a trade secret claim relating to computer software is allowed, since the extra element of a confidential relationship is necessary. However, a court applying Illinois law has determined that a copyright registration results in public disclosure of the matter, and public disclosure precludes the creation of a confidential relationship. *American Sign & Indicator Corp. v. Schulenburg,* 167 F.Supp. 20 (E.D.Ill.1958).

The *Shellmar* doctrine established that a subsequent public disclosure does not negate a trade secret claim as long as there was a confidential relationship. *Shellmar Products Co. v. Allen–Qualley Co.,* 87 F.2d 104 (7th Cir.1936). However, this case involves a previous disclosure. A contrasting doctrine, the *Conmar* doctrine, states that a subsequent public disclosure negates any claim to enjoin a Defendant from using a "disclosed in confidence" trade secret. *Conmar Products Corp. v. Universal Slide Fastener Co.* 172 F.2d 150 (2d

Cir.1949). In *Conmar,* there was a prior public disclosure via the copyright office. Florida has not expressly followed either of these doctrines or taken a position as to whether a prior copyright negates any subsequent claim of a confidential relationship. However, as applied to patents, Florida case law in *Keystone Plastics* precludes a claim of confidentiality or "secrecy" if the subject has previously or subsequently been patented. *Keystone,* 340 F.Supp. 55 (S.D.Fla.1972).

## III.  Did Plaintiff establish, or take the necessary steps to establish, a confidential relationship between Plaintiff and Defendant?

Defendant further asserts that no confidential relationship existed between Plaintiff and Defendant, since Defendant must follow Chapter 119 of the Florida Statutes, the Public Records Act. If Florida negates any confidentiality claim because of prior public disclosure, this issue may be moot.

Plaintiff claims that Hillsborough County breached a confidential relationship. It has been found, although not in Florida, that a previous disclosure to the public negates any possibility of establishing a subsequent confidential relationship. *See Skoog v. McCray Refrigerator Co.,* 211 F.2d 254, 256 (7th Cir.1954). The court has determined that "any property right [trade secret claim] based upon secrecy [confidentiality] was lost as early, at least, as the first public exhibition." *Affiliated Enterprises v. Gruber,* 86 F.2d 958 (1 Cir. 1936).

In *Bateman v. Mnemonics, Inc.,* the Eleventh Circuit Court of Appeals concluded that although a trade secret claim regarding computer software can co-exist with a copyright infringement claim, Plaintiff did not plead enough to establish a confidential relationship. *Bateman,* 79 F.3d at 1549 (11th Cir.1996). The Eleventh Circuit concluded that there was a "lack of substantial evidence that [Defendant] was ever made aware of any obligation of confidentiality." *Id.* at 1550.

In this case, Plaintiff has submitted documents that show that his designs were marked "confidential." Plaintiff has alleged that Defendant was well aware that the designs were to be kept confidential. This express stamp of confidentiality, coupled with the alleged implied agreement, is enough to establish a confidential relationship.

Defendant also states that because the distributed drawings were created by employees of Hillsborough County, no original documents of Plaintiff were ever distributed or misappropriated by Defendant. The Court finds that this claim is not valid since it is not a requirement that the misappropriated documents be the actual originals.

## IV. Has Plaintiff plead the necessary requirements for injunctive relief?

Lastly, Defendant contends that Plaintiff has failed to plead the necessary elements required for injunctive relief: (1) likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) threatened injury to Plaintiff outweighs the harm an injunction may cause Defendant; and (4) granting the injunction would disserve public interest. Defendant asserts that Plaintiff has not shown a likelihood of success on the merits or how keeping information subject to the Public Records Act does not disserve the public interest.

The Court concludes Plaintiff has established a likelihood of success on the merits. Plaintiff has shown that if his designs were a trade secret, he stamped them with the notation "confidential," which created a confidential relationship with Defendant. Additionally, Plaintiff has alleged adequate facts for a misappropriation. Plaintiff has alleged that he will have the irreparable injury of a substantial loss in market share if Defendant is not enjoined. Also, Plaintiff will suffer substantial harm. Defendant is free to compensate him for the use of his copyrighted and "trade secret" designs, or to find another designer to meet its needs. Therefore, Plaintiff's harms will likely outweigh Defendant's. Lastly, it is well within the public interest to keep trade secrets free from general disclosure.

There is a direct conflict between *Mnemonics*, the computer case in Florida, and *Keystone Plastics*, which did not allow a patent and a trade secret claim to co-exist. The Court concludes that because the design was copyrighted, Plaintiff lost all claims to a misappropriation of a trade secret. By the definition of a trade secret, secrecy is necessary. In *Mnemonics*, the case dealt with computer technology. This area is fast establishing a unique set of rules that may not apply to written documents such as a boat ramp design.

This conflict is a matter of law, and not a jury decision. Another difficulty is that the statutory language does give the qualifier that the person getting the information would be able to profit from the information. By law, others cannot profit from someone's copyright with express or implied permission from the holder. The Court has looked for but not found any case law or other authority which discuss this provision of the statute. Accordingly, it is

**ORDERED** that Defendant's Motion for Judgment on the Pleadings as to Count II is **granted.**